IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

COREY HINES,                            )
                                        )
                    Petitioner,         )
                                        )
vs.                                     )        Case No. 11-cv-1064-MJR
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                    Respondent.         )

MEMORANDUM AND ORDER

REAGAN, District Judge:

    I.      Introduction

        Now before the Court is Corey Louis Hines's petition to vacate, set aside
or correct sentence under 28 U.S.C. § 2255.  Analysis of the petition begins with an
overview of the procedural history of the underlying criminal case.

        On March 5, 2008, Hines was charged in an Indictment with one count of
possession of a prohibited object (marijuana) in a federal prison.  (*United States v.
Hines*, Case No. 08-cr-30040-MJR) (Doc. 1) ("Crim. Doc.).  On April 23, 2008, Hines
was charged in a Superseding Indictment with possession of a prohibited object
(marijuana) in a federal prison (Count 1), possession of marijuana with intent to
distribute (Count 2) and  conspiracy to distribute and possess with intent to distribute
marijuana and heroin (Count 3) (Crim. Doc. 22).

        After numerous, lengthy delays occasioned by Hines's recalcitrant
behavior in refusing to cooperate with Magistrate Judge Philip M. Frazier and
Magistrate Judge Clifford J. Proud, with the examining psychologist during a Court-

ordered competency examination, with counsel and with the undersigned District Judge, as well as numerous interlocutory appeals, a jury trial commenced.   Hines refused to come to the courtroom, even though the Court warned him that he would forfeit his right to represent himself if he refused.

Hines was brought, unwilling, to the courtroom shortly before jury selection and announced that he wanted nothing to do with the trial.   He was represented at trial by Assistant Federal Public Defender Dan Cronin who waived Hines's presence at jury selection by stating that the Court had satisfied Rule 43(a) of the Federal Rules of Criminal Procedure and the Constitution.   On October 20, 2009, the jury found Hines guilty on Counts 1 and 2, but not guilty on Count 3 of the Superseding Indictment.   On April 9, 2010, the undersigned Judge sentenced Hines to a term of 60 months' imprisonment on Count 1 and 84 months on Count 2, to be served consecutively to each other and consecutively to the undischarged term of imprisonment imposed in the United States District Court for the Eastern District of Missouri.   Hines was placed on supervised release for a term of 3 years on Count 1 and 4 years on Count 2, to run concurrently, and a special assessment of $100 on each of Counts 1 and 2, for a total of $200.00.

Proceeding *pro se*, Hines appealed his conviction and sentence to the United States Court of Appeals for the Seventh Circuit.   **United States v. Hines, 407 Fed.Appx. 975 (7th Cir. 2011)**.   He raised the following challenges on appeal:   (1) use of confession; (2) defects in instituting the prosecution; (3) denial of a detention hearing at his first appearance; (4) denial of a *Faretta* colloquy; (5) denial of a fair hearing on pretrial motions; (6 and 7) pre-accusation and pretrial delay; (8) denial of

2

a hearing pursuant to 18 U.S.C. § 4247(d); (9) deprivation of *pro se* status; (10) impaneling a jury in his absence; (11) the Court's refusal to disqualify himself; (12) the Court's striking objections to the presentence report; (13) lack of subject-matter jurisdiction; (14) lack of personal jurisdiction; and (15) defective Indictment (Doc. 26-1, "Brief of Defendant-Appellant").

On February 10, 2011, the Seventh Circuit denied all of Hines's assertions of error and affirmed his convictions and sentence in all respects.  The Court denied rehearing on March 14, 2011.  On April 15, 2011, Hines filed a Petition for Writ of Certiorari with the United States Supreme Court.  On October 3, 2011, the Supreme Court denied review.  *Hines v. United States,* **132 S.Ct. 352 (2011)**.

On December 5, 2011, Hines, proceeding *pro se*, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).   On January 30, 2012, Hines filed a motion requesting disposition of preliminary review of his petition (Doc. 2).  On March 15, 2012, Hines filed an interlocutory appeal "from the final judgment denying § 2255 and motion for disposition of preliminary review of § 2255" (Doc. 3).  On July 30, 2012, the Seventh Circuit issued its Mandate, dismissing Hines's appeal for lack of jurisdiction and denying his motion for rehearing (Doc. 18).

On July 9, 2012, while the petition for rehearing was pending, Hines filed a motion seeking the recusal or disqualification of the undersigned Judge (Doc. 16).  On August 8, 2012, the Court completed its preliminary review and directed the Government to respond to the petition by September 18, 2012 (Doc. 21).  The Court also directed the Government to respond to the motion for recusal or disqualification by August 28.  Hines subsequently supplemented his petition (Doc. 20) and filed two

3

additional appeals (Docs. 29, 30).   The appeals were again denied for lack of jurisdiction (Doc. 44).  On February 26, 2013, the Court denied Hines's motion to stay adjudication pending review on *certiorari* and his motion for recusal or disqualification of the undersigned Judge (Docs. 46, 48, 49).  On March 1, 2013, the Court denied Hines's motion to strike the Government's response to his petition (Docs. 37, 50).  For the reasons stated below, the Court now dismisses Hines's § 2255 petition.

II.   <u>Analysis</u>

28 U.S.C. § 2255 authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, or … the court was without jurisdiction to impose such sentence, or … the sentence was in excess of the maximum authorized by law…."

Relief under § 2255 is limited.   Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude.  *See, e.g., Corcoran v. Sullivan*, 112 F.3d 836, 837 (7th Cir. 1997)(§ 2255 relief is available only to correct "fundamental errors in the criminal process").  As the Seventh Circuit has declared, § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (citing *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)).  *Accord Prewitt v. United States*, 83

4

F.3d 812, 816 (7th Cir. 1996)("... relief under 28 U.S.C. § 2255 is reserved for extraordinary situations")).

Section 2255 cannot be used as a substitute for a direct appeal *or* to re-litigate issues already raised on direct appeal. *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir.), *cert. denied*, 540 U.S. 926 (2003). *Accord Theodorou v. United States,* 887 F.2d 1336, 1339 (7th Cir. 1989)(§ 2255 petition "will not be allowed to do service for an appeal.").

    A.   <u>Timeliness of petition</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996, a § 2255 petition must be filed within one year of the date on which the judgment of conviction becomes final. *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005) (citing 28 U.S.C. § 2255, ¶ 6(1)). While the statute does not define finality, "the Supreme Court has held that in the context of postconviction relief, finality attaches when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'" *Id.* (citation omitted).

In the current proceeding, the Supreme Court denied review on October 3, 2011. *Hines,* 132 S.Ct. 352. Hines filed his petition approximately two months later on December 5, 2011. Accordingly, the petition is timely filed.

    B.   <u>Procedurally Barred Claims</u>

"[A] section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds*, *Castellanos v. United States,* 26 F.3d 717 (7th Cir.

1994) (citations omitted).  "As a result, there are three types of issues that a section 2255 motion can *not* raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.  *Id.* (citing *United States v. Rodriguez*, 792 F.Supp. 1113 (N.D.Ill.1992); *see Norris v. United States*, 687 F.2d 899, 900 and 903-04 (7th Cir. 1982) (On appeal from the denial of a section 2255 motion, the court refused to consider issues previously decided on direct appeal from the conviction and nonconstitutional issues that could have been but were not raised on direct appeal. The court would consider constitutional issues that could have been raised on direct appeal only if petitioner showed cause and prejudice) (additional citations omitted) (emphasis in original).

In the instant petition, Hines asserts several claims that are exactly the same as those raised in his direct appeal of his conviction:  (1) defect in instituting the prosecution; (2) speedy trial violation ("preaccusation and pretrial delay"); and (3) abuse of discretion (failure to hold a timely *Faretta* colloquy, failure to grant a fair hearing, failure to give a fair competency hearing, denial of right to proceed *pro se*, commencing trial (impaneling jury) in his absence and the undersigned Judge's failure to recuse himself).  Hines has not alleged any "changed circumstances" that would merit revisiting issues already decided on direct appeal.  He cannot relitigate these claims. In summary, Hines is procedurally barred from challenging these

determinations again in a § 2255 petition, and the claims merit no further consideration.

Next, Hines contends that the Court abused its discretion by not ordering the Government to comply with a discovery rule that required it to produce evidence that would have proven his defense of "lack of in personam jurisdiction" (Doc. 1-1, p. 20).  This claim is also procedurally barred, not because Hines raised it on direct appeal but because he did not.  Assuming that there is a potential constitutional violation, *i.e.,* that the Government violated its duty to disclose exculpatory evidence, Hines has not shown the necessary cause and prejudice that he must show in order to raise the issue in his § 2255 petition.  *See Miller v. United States*, **183 Fed.Appx. 571, 579 (7th Cir. 2006)**.

Even if Hines's claim were not procedurally barred, it is meritless.  First, the Court did order compliance with discovery rules in this case (Crim. Doc. 7).  Second, the Court is not required to compel compliance with *Brady v. Maryland,* **373 U.S. 97 (1963)**, because *Brady* is a "self-executing constitutional rule that due process requires disclosure by the prosecution of evidence favorable to the accused that is material to guilt or punishment."  *United States v. Garrett*, **238 F.3d 293, 302 (5th Cir. 2000)**.  Third, the evidence that Hines contends was "suppressed," relates to his frivolous claim that the Court lacks personal jurisdiction over him because he is not a citizen.

More specifically, Hines sought production of such things as his original birth certificate; Social Security record; applications for a State identification card, driver's license and food stamps; and copies of records which he claimed should be

provided at no charge by the Clerk of Court for this District (Crim. Docs. 100, 102). The Government responded that it was not in possession of any of the documents sought, which were, in any case, "irrelevant to any material issue in this case as there is no such valid 'personal jurisdiction' defense in this case" (Crim. Docs. 117, 119). Hines's motion for production of these documents was denied as moot on September 11, 2009, after a hearing in open court – which Hines refused to attend – when the Court appointed counsel to represent him (Crim. Doc. 128).

Hines was not prejudiced by the Court's refusal to order the Government to produce the documents at issue.  He was an inmate in a federal prison within the United States and was charged with violating federal statutes by bringing drugs into that facility.  This Court's jurisdiction over Hines – regardless of whether he was a citizen of this country – was properly exercised. His continued pursuit of this frivolous claim is further evidence of the obstructive behavior that marked this action. Moreover, Hines was, from the day of the hearing (September 11, 2009) forward, at all times represented by counsel who could request production of any relevant documents.  Hines's claim that the Court should have ordered the Government to produce the documents at issue is both procedurally barred and meritless.

C.   Ineffective Assistance of Counsel Claims

Hines alleges eight reasons why his appointed counsel was ineffective: (1) failure to raise the defect in instituting the prosecution; (2) failure to raise the Fourth Amendment violation; (3) failure to attack the defective indictment; (4) refusal to advocate Hines's case; (5) refusal to withdraw; (6) failure to consult with Hines; (7) failure to bring to bear such skill and knowledge as would have rendered

8

the trial a reliable adversarial testing process; and (8) failure to defend Hines at sentencing.  As will be explained below, the claims are both procedurally barred and meritless.

First, an evidentiary hearing on Hines's ineffective assistance of counsel claims is not warranted.  These claims often require an evidentiary hearing, "because they frequently allege facts that the record does not fully disclose."  *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008).  But the issues raised here can be resolved on the existing record, which conclusively demonstrates that Hines is entitled to no relief.  *See* Rule 8(a) of RULES GOVERNING SECTION 2255 PROCEEDINGS; *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir.), *cert. denied*, 551 U.S. 1132 (2007); *Gallo-Vasquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2005); *Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002).  Stated another way, Hines has not alleged facts that, if proven, would entitle him to relief.  *See Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

Second, under the Seventh Circuit's analysis in *McCleese v. United States*, 75 F.3d 1174 (7th Cir. 1996), the claims are procedurally barred.  There the Court observed that most ineffective assistance claims are properly raised for the first time in a § 2255 petition.  *McCleese,* 75 F.3d at 1178 (collecting cases).  The Court explained that this procedure is justified on two grounds:  (1) "in order to be successful, such claims generally require that the record be supplemented with extrinsic evidence that illuminates the attorney's errors"; and (2) "where trial counsel was also appellate counsel … he can hardly be expected to challenge on appeal his own ineffectiveness at trial."  *Id.* (citations omitted) (internal quotation marks

omitted).  The result of this rule is that "[w]here a defendant offers no extrinsic evidence to support his claim of ineffective assistance of counsel and he was represented by different counsel on appeal, that defendant must bring that claim on direct appeal or face procedural default for failing to do so."  *Id.* (citations omitted).

Here, Hines proceeded *pro se* on appeal, so he cannot escape this procedural bar on the basis of the second ground, that trial counsel was also appellate counsel.  Consequently, unless Hines offers extrinsic evidence to support his claims of ineffective representation, the claims are procedurally barred.

Upon careful review of Hines's petition and supplement, the Court finds that Hines has offered no objective extrinsic evidence to support his claims.  The only evidence offered that is outside the criminal records is a self-serving affidavit in which Hines merely sets forth the grounds asserted in his petition and states that his counsel was deficient.  This is not objective evidence that would support a prejudice argument.  Because Hines offers no material extrinsic evidence in support of his ineffective assistance claims and because he was represented by counsel at trial but proceeded *pro se* on appeal, these claims are not of the type properly raised for the first time in a § 2255 motion.  *See McCleese,* **75 F.3d at 1178**.  As such, they are procedurally barred.  Nonetheless, the Court will review the claims individually to determine whether they overcome a procedural default by meeting the cause and prejudice test.

The Sixth Amendment to the United States Constitution accords criminal defendants the right to effective assistance of counsel.  *Wyatt v. United States*, **574 F.3d 455, 457 (7th Cir. 2009)**, *cert. denied*, 130 S.Ct. 1925 (March 22, 2010).  To

prevail on a claim of ineffective assistance, a defendant must prove two things (a) that his attorney's performance was objectively unreasonable and (b) that he suffered prejudiced as a result of this constitutionally deficient performance. *Wyatt*, **574 F.3d at 457-58**; *United States v. Peleti,* **576 F.3d 377, 383 (7th Cir. 2009)**; *Strickland v. Washington*, **466 U.S. 668, 687 (1984)**.

This first requirement of this dual test is referred to as "the performance prong" and the second as the "prejudice prong." <u>As to the performance prong</u>, a § 2255 petitioner must overcome a "strong presumption that [his] counsel's conduct falls within the wide range of reasonable professional assistance." *Wyatt*, **574 F.3d at 458 (quoting *Strickland*, 466 U.S. at 687-88)**.  He must establish the specific acts or omissions he claims constitute ineffective assistance, and the Court then assesses whether those acts/omissions are outside the scope of reasonable legal assistance. *Id. See also United States v. Acox*, **595 F.3d 729, 734 (7th Cir. 2010)** (citing *Williams v. Lemmon*, **557 F.3d 534 (7th Cir. 2009)** (Deciding "whether counsel's services were beneath the constitutional floor requires consideration of what counsel did, as well as what he omitted.")).

Evaluation of counsel's performance is highly deferential.  The reviewing court presumes reasonable judgment by counsel and must not second-guess counsel's strategic choices or "tactical decisions." *Valenzuela v. United States*, **261 F.3d 694, 699 (7th Cir. 2003)**.  Moreover, the court must "consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, … [applying] a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Id.*

As to the prejudice prong, the defendant/petitioner must demonstrate a reasonable probability that, *but for counsel's errors*, the result of the proceeding would have been different. *United States v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010). The inquiry focuses on whether the counsel's errors rendered the proceedings "fundamentally unfair or unreliable." *Valenzuela*, 261 F.3d at 699. As explained below, Hines's claims fail the *Strickland* test.

Three of Hines's claims (numbers 1, 2 and 3) fail because they involve appointed counsel's refusal to file frivolous motions or to pursue frivolous defenses. The first and second claims are related. In the first claim, Hines asserts that counsel should have investigated a "plausible line of defense" that the Government obtained an indictment without first filing a complaint with the magistrate judge that established probable cause. In the second claim, Hines contends that he was seized in violation of the Fourth Amendment because the Government did not file a complaint establishing probable cause before his indictment and arrest. His third claim is that counsel failed to attack the indictment which was defective on grounds of duplicity and multiplicity.

The first two claims reveal Hines's misunderstanding of how the prosecution of his criminal case was initiated. Because he was already an inmate serving a valid sentence when he was interviewed by an FBI agent and placed in administrative segregation, Rule 5 of the Federal Rules of Criminal Procedure does not apply.[1] *See United States v. Reid*, 437 F.2d 1166, 1167 (7th Cir. 1971).

---

[1] Rule 5(a)(1)(A) provides, "A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise."

Furthermore, Hines was not entitled to a probable cause determination. The Indictment itself sufficiently establishes probable cause. *United States v. Hurtado*, 779 F.2d 1467, 1477 (11th Cir. 1985) (citing *Ex parte United States*, 287 U.S. 241, 250 (1932); *Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19 (1975); *Giordenello v. United States*, 357 U.S. 480, 487 (1958) ("It is so well settled as to be beyond cavil that the return of a true bill by a grand jury, resulting in indictment, conclusively demonstrates that probable cause exists implicating a citizen in a crime.")). In sum, Hines was not entitled to a preliminary hearing or other probable cause determination.

These findings negate Hines's first two claims of ineffective assistance. Defense counsel was barred from raising frivolous claims by his responsibility to the Court and by the requirements of professional ethics. The reasonably competent assistance standard does not mean that counsel, in order to protect himself from allegations of inadequacy, must "waste the court's time with futile or frivolous motions." *United States v. Bosch*, 584 F.2d 1113, 1122 (1st Cir. 1978) (citation omitted); *see also United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003) (A defendant's lawyer has, it is certainly true, no duty to make a *frivolous* argument....") (emphasis in original). While the Court does not seek to constrain attorneys in their vigorous advocacy of their clients interests, "as officers of the Court, they have both an ethical and a legal duty to screen the claims of their clients for factual veracity and legal sufficiency." *Lepucki v. Van Wormer*, 765 F.2d 86, 87 (7th Cir. 1985). Under Rule 3.1 of the Model Rules of Professional Conduct, "A

lawyer shall not … assert or controvert an issue … unless there is a basis for doing so that is not frivolous.…"   Hines's counsel acted as a competent attorney in screening Hines's requests and was not ineffective for refusing to pursue frivolous arguments.

Hines's third ground fails for the same reason – that his counsel had a duty not to raise a frivolous issue – although the analysis is somewhat more complex. Hines contends that the Superseding Indictment was duplicitous or multiplicitous because the Counts involve the same criminal conduct.

In *United States v. Starks*, 472 F.3d 466 (7th Cir. 2006), the Seventh Circuit explained "multiplicity" as follows:

> Multiplicity is the charging of a single offense in separate counts of an indictment.   Multiplicity in an indictment exposes a defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. The traditional test of multiplicity determines whether each count requires proof of a fact which the other does not. If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity.  We focus on the statutory elements of the charged offenses, not the overlap in the proof offered to establish them, because a single act may violate several statutes without rendering those statutes identical. *Starks*, 472 F.3d at 468-69 (citations omitted) (internal quotation marks omitted).

Accordingly, the Court focuses on the statutory elements of the charged offenses – Count 1, possession of a prohibited object (marijuana) in federal prison in violation of 18 U.S.C. § 1791(a)(2); Count 2, possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and Count 3, conspiracy to distribute and possess with intent to distribute marijuana and heroin in violation of 21 U.S.C. § 846 (Crim Doc. 22).   The elements for these offenses are as follows.

Count 1 (18 U.S.C. § 1791(a)(2))[2]:

> First: the defendant knowingly or intentionally possessed a prohibited object in a federal prison;
> Second: the prohibited object was marijuana; and
> Third: the defendant was an inmate.

Count 2 (21 U.S.C. § 841(a)(1))[3]; (7th Cir. Pattern Jury Instruction)

> First:  the defendant knowingly possessed marijuana;
> Second:  the defendant intended to distribute the substance to another person; and
> Third: the defendant knew the substance was or contained some kind of a controlled substance.

Count 3 (21 U.S.C. § 846))[4]; (7th Cir. Pattern Jury Instruction 5.08(B)):

> First:  the conspiracy as charged in Count 3 existed; and
> Second:  the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

From the above recitation of the elements that must be proven as to each Count, it is clear that each charged offense required proof of a fact that the others did not.   Count 1 requires proof that Hines was an inmate.   Count 2 requires proof that Hines intended to distribute the marijuana he possessed.   Count 3 requires proof that Hines conspired with at least one other individual.   As a result, Hines's

---

[2] **(a) Offense.**--Whoever--

**Offense**. -  Whoever - being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object;... **18 U.S.C. § 1791(a)(2)**.

[3] (a) Unlawful acts
    Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
      (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;... **21 U.S.C. § 841(a)(1)**.

[4] **Attempt and conspiracy**
    Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.  **21 U.S.C. § 846**.

counsel was not ineffective for refusing to pursue a multiplicity challenge to the Superseding Indictment, and Hines was not prejudiced thereby.

Hines's duplicity argument fails by a similar standard.  He asserts that Count 2 is duplicitous because the jury could be confused and not decide separately his guilt or innocence with respect to possession of marihuana and possession with intent to distribute it or to use it.  And, although difficult to distinguish, Hines may also be asserting that Count 3 is duplicitous because it alleges a conspiracy in two ways – to distribute and to possess with intent to distribute.

Counts 2 and 3 are not duplicitous. "A duplicitous charge is not one that simply alleges a single offense committed by multiple means but rather one that joins two or more distinct crimes in a single count." *United States v. Vallone*,  698 F.3d 416, 461 (7th Cir. 2012) (internal citations and citations omitted).

It is well-established that "possession with intent to distribute and distribution, alleged in the conjunctive, was statutory language drawn from the same sentence of subsection (a)(1)." *United States v. Orzechowski*,  547 F.2d 978, 987 (7th Cir. 1976).  As such, Count 2 is not duplicitous. *Id.*

Count 3 does not allege two different crimes. Instead, it alleges a conspiracy with two goals—(1) to distribute marijuana and (2) to possess with intent to distribute marijuana.  This is a permissible charge. *See Vallone,* 698 F.3d at 461. As explained by the United States Supreme Court, "A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object…. The single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute." *Id.*

16

(quoting *Braverman v. United States*, 317 U.S. 49, 54 (1942)).   Consistent with that reasoning, the Court concludes that Count 3 is not duplicitous.

Because Counts 2 and 3 are not duplicitous, Hines's counsel was not ineffective for refusing to pursue a duplicity challenge to the Superseding Indictment, and Hines was not prejudiced thereby.

Hines's next ineffective assistance claim (number 4) is that appointed counsel (AFPD Daniel Cronin) refused to advocate his cause, in that counsel would not assist him in mounting his in personam jurisdiction defense.

During the period from March 21, 2008, to September 11, 2009, Hines was proceeding *pro se,* and Mr. Cronin was acting as standby counsel rather than fully representing Hines (Crim. Docs. 9, 128).   As the Seventh Circuit observed in *United States v. Windsor*, **981 F.2d 943 (7th Cir. 1992)**, "This court knows of no constitutional right to effective assistance of standby counsel."   **981 F.2d at 947**. The Court continued,

> As the word "standby" implies, standby counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney. A defendant who has elected to represent himself "cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel." *Id.* (quoting *Faretta*, 422 U.S. at 834-35 n. 46) (citation omitted)).

Even if Hines was entitled to effective assistance throughout the course of this proceeding, he has not shown – nor does the Court find – that the assistance he received was constitutionally deficient as to Mr. Cronin's refusal to assist him in mounting his in personam jurisdiction defense.

As stated above, Hines's challenge to this Court's personal jurisdiction is frivolous.  *See above*, pp. 7-8.  Hines argues that he is not a citizen of the United States (although born in St. Louis, Missouri).  This argument was soundly rejected both in this District Court and by the Seventh Circuit.  Mr. Cronin's obligation, as explained above, was to refrain from wasting the Court's time with frivolous and futile arguments.

In summary, when Mr. Cronin acted as standby counsel, no constitutional right to effective assistance attached.  And to the extent that the issue relates to the time when Mr. Cronin fully represented Hines, Mr. Cronin rightly refused to pursue the frivolous claim urged on him by Hines.  Hines was not prejudiced by Mr. Cronin's refusal to pursue a frivolous argument.

Hines's next ineffective assistance claim (number 5) involves Mr. Cronin's refusal to withdraw from representing him even though he had a conflict of interest.  Hines asserts that he has demonstrated that Mr. Cronin had a personal conflict with him from the outset of these proceedings.  Hines contends that Mr. Cronin failed to advocate his cause in the pretrial phase, did not "ideally" investigate his line of defense, failed to communicate with Hines and refused to withdraw when instructed by Hines to do so.

In *Hall v. United States*, **371 F.3d 969 (7th Cir. 2004)**, the Seventh Circuit set out the two grounds upon which a petitioner may assert a claim based on counsel's conflict of interest:  (1) showing that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense (*Strickland*, **466 U.S. 668)**, or (2) establishing a violation "by showing that 'an *actual* conflict of interest

18

adversely affected his lawyer's performance'" (*Cuyler v. Sullivan*, 446 U.S. 335 (1980)).   *Hall*, 371 F.3d at 973 (emphasis in original) (additional citations omitted).   A conflict of interest arises in instances such as where an attorney previously represented (or presently represents) another party on a related matter or where an attorney is faced with a choice between advancing his own interests above those of his client.   *Id.*

First, the Court will not consider any claims that arose during the period that Mr. Cronin acted as standby counsel (March 21, 2008, to September 11, 2009).   As stated above, there is no constitutional right to effective assistance of standby counsel.   *Windsor*, 981 F.2d at 947.   Second, Hines appears to misunderstand the legal meaning of a conflict of interest.   He has identified no instance where Mr. Cronin breached his responsibility to Hines.

Mr. Cronin's refusal to renew the motions Hines filed while he acted *pro se* does not show any conflict of interest or establish ineffective assistance of counsel. The motions were frivolous, and Mr. Cronin, again, had an obligation to refrain from subjecting the Court to futile, time-wasting arguments.   For example, the motion at Doc. 100 sought copies of Hines's birth certificate and Social Security record so he could pursue his frivolous lack of in personam jurisdiction argument.   In the motion at Doc. 102, Hines contends that he was unable to obtain a copy of his detainer arrest warrant from the correctional institution at which he was incarcerated and that the Clerk of Court for this District refused to provide him with copies at no charge.   No possible prejudice could arise from Hines's inability to obtain a copy of this warrant. In the motion at Doc. 109, Hines seeks a "mandatory injunction," referencing,

variously, arbitrary disciplinary actions, the lack of an appropriate bed and being placed in disciplinary segregation.   These complaints could be appropriate in an action brought pursuant to 42 U.S.C. § 1983 but have no bearing on Hines's criminal case.   Moreover, his assertion that Mr. Cronin's motion in limine (Doc. 120) was a direct breach of his responsibility to Hines is meritless because the motion was filed by Government counsel and not Mr. Cronin.

In summary, Hines has identified no evidence of a conflict of interest that would require Mr. Cronin to withdraw and appears to misapprehend the term. Mr. Cronin's representation of Hines was not ineffective because he failed or refused to refile motions that the Court had denied as moot when Mr. Cronin was appointed to represent Hines.   Rather, Mr. Cronin's obligation was to refrain from subjecting the Court to futile motions.   No prejudice arose from Mr. Cronin's refusal to follow Hines's instructions in this regard.

In Hines's next ineffective assistance claim (number 6), he contends that Mr. Cronin failed to consult with him.   He submits that Mr. Cronin did not discuss trial strategy with him, refused to put on evidence that the Court lacked personal jurisdiction over him and pursued a course at trial that was "his own line of defense" without Hines's consenting to such a strategy.

Again, the Court will not consider any claims that arose during the period that Mr. Cronin acted as standby counsel (March 21, 2008, to September 11, 2009) because there is no constitutional right to effective assistance of standby counsel. *Windsor*, 981 F.2d at 947.

20

Given Hines's adamant rejection of any attempt by Mr. Cronin to communicate with him, he can scarcely be heard to complain about that lack of communication.   The Court is struck by Hines's temerity in complaining that Mr. Cronin failed to communicate with him where Hines threatened to spit on him.

Hines insisted that no attorney attempting to represent him be present in the courtroom during trial.  Hines also repeatedly challenged the Court's authority, refused to answer the Court's questions and refused to cooperate in proceedings (*See* Doc. 128).  Hines refused to leave his cell for the competency phase of the September 11, 2009, hearing and also refused to participate in the *Faretta* colloquy. At that hearing, Mr. Cronin, acting as standby counsel, reported that Hines would not communicate with him.  Throughout the course of this proceeding, Hines continued to insist that he would proceed *pro se* and continued to file motions on his own behalf (*See* Crim. Docs. 138, 139, 148 and 152).  At the commencement of the September 24, 2009, status hearing, Federal Public Defender Phillip J. Kavanaugh reported that he and Mr. Cronin had gone to the holdover cell, but Hines refused to come to the holdover cell to meet with them (Crim Doc. 157, 9/24/09 Trans., 2:22-24).   Mr. Kavanaugh stated that he passed some materials to a deputy who delivered them to Hines, but Hines still refused to come out (*Id.* at 2:24-3:1).

The underlying criminal case is replete with instances of Hines's obdurate, recalcitrant behavior and refusal to communicate with counsel and the Court.   The record shows that Hines rebuffed with silence, threats or insults Mr. Cronin's every attempt to communicate with him.  In short, Hines cannot show that counsel's performance was deficient or that he was prejudiced in this regard.

21

In Hines's next ineffective assistance claim (number 7), he contends that Mr. Cronin failed to bring to bear such skill and knowledge as would have rendered the trial a reliable adversarial testing process.  His contentions in this regard are a rehash of ineffective assistance claims already rejected by this Court:  failure to assist him at the outset of the proceedings; failure to file pretrial motions; failure to attack defects in instituting the prosecution; failure to prosecute the speedy trial violation; failure to consult with Hines on trial strategy; and failure to investigate Hines's plausible line of defense (lack of *in personam* jurisdiction).  The Court will not tarry over this argument.  Suffice it to say that for the reasons set forth above, these claims are procedurally barred and completely meritless.

As the Court acknowledged at the sentencing hearing, Mr. Cronin zealously and effectively represented Hines.  The Court observed -

> With respect to the seriousness of the offense, the Court notes, first of all, that the evidence of Mr. Hines' guilt was overwhelming. A video was shown that clearly established his guilt beyond a reasonable doubt consistent with the jury findings. It was good lawyering and probably a lot of luck that saved him from being found guilty of the more serious count in this case.

Hines cannot show that Mr. Cronin's assistance was ineffective or that he was prejudiced by any failure on Mr. Cronin's part to bring to bear his skill and knowledge in testing the Government's case.

In Hines's final ineffective assistance claim (number 8), he contends that Mr. Cronin failed to defend him at sentencing.  Hines submits that he filed, *pro se,* objections to the Presentence Investigation Report (PSR) and a motion to stay sentencing which Mr. Cronin failed to investigate or renew at sentencing.  First, Hines

contends that his prior convictions were not final because they were on appeal and, as a result, could not be counted as criminal history under the guidelines.  Second, Hines asserts that he had several prior sentences that were the result of uncounseled misdemeanors where imprisonment was imposed.  According to Hines, if Mr. Cronin had investigated, he would have found that there was no valid waiver of counsel as to these misdemeanors, which mandated their exclusion from his criminal history.

The prior felony drug convicted cited and used under 21 U.S.C. § 851 to increase the statutory maximum possible sentence to 10 years was a 1991 Missouri state court conviction for distribution of a controlled substance near a school (Count 1) and possession of a controlled substance (cocaine) (Count 2) (Crim. Doc. 217, PSR at ¶ 35).  Hines pleaded guilty on June 4, 1991, and was sentenced to 10 years' imprisonment on Count 1 and 7 years' on Count 2, to be served concurrently.  *Id.* After numerous violations of probation and revocations of probation and parole, Hines's full term of imprisonment was reimposed.  *Id.*  He was released and discharged from the Missouri Department of Corrections on August 26, 2002.  *Id.*

For Hines to assert that his conviction had not become final for purposes of §§ 841 and 851 more than 19 years after he pleaded guilty and more than 7 years after he was discharged strains credulity beyond the breaking point.  Hines has not provided any evidence, nor even asserted, that he filed a belated collateral challenge in state court or that any action remains pending as to this conviction.

Stated simply, Mr. Cronin's representation was not ineffective for failing to file this frivolous challenge, and Hines has demonstrated no prejudice that accrued to him.

As to Hines's second challenge, the PSR shows that Hines waived counsel and pleaded guilty to each of the countable misdemeanor convictions (Crim. Doc. 217, PSR at ¶¶ 36, 38, 39, 40, 43).   Other than Hines's current self-serving declarations, he offers no evidence to controvert the PSR.   If Hines had wished to challenge the PSR, he had an opportunity during sentencing, but he instead refused to communicate with Mr. Cronin, with the probation officer who prepared the report and with the Court (See Crim. Doc. 217, ¶ 71 ("The defendant declined to be interviewed by the probation officer."); Doc. 245, Sentencing Hearing Trans.).

At sentencing, the Court inquired,

> Mr. Hines, have you reviewed the Presentence Investigation Report in your case? Are you just going to refuse to speak, sir? That is certainly your right. I want to have it clear if there is anything you want to say about the Presentence Investigation Report, any conclusions regarding it, now is the time to do that or they are going to be considered waived. All right, you have nothing to say.  The Court accepts the Presentence Investigation Report which was disclosed March 5th of 2010.  (Doc. 245, Trans. at 2:25-3:8).

Accordingly, in open court, Hines waived his right to challenge the PSR. As a result, Hines cannot now show that Mr. Cronin was deficient in representing him at sentencing.

Lastly, "[w]hen the alleged deficiency is a failure to investigate, the movant must provide 'the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (citing *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)).   Hines offers no reason to believe that the PSR was inaccurate in any respect.  *See id.* (citing *United States v. Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (movant did not "offer[ ] a shred of

evidence that supports his claim") (additional citation omitted)).   Without any evidence that the PSR was inaccurate, Hines cannot show that he was prejudiced by Mr. Cronin's alleged failure to investigate the information provided in the PSR.

     D.    Supplement (Doc. 20)

     On August 7, 2012, Hines submitted a supplement to his § 2255 petition in which he asserts the following sentencing errors:  (1) he did not read and discuss the PSR with counsel; (2) the sentencing court erred in considering the relevant conduct drug quantities charged in Count 3, of which Hines was acquitted; (3) the sentencing court erred in failing to give reasons for imposing consecutive sentences. As to this latter ground, Hines asserts that the Court sentenced him to a total of 144 months' imprisonment where the maximum possible sentence was 120 months.

     As to the first ground, that Hines did not read and discuss the PSR with counsel, the Court considered this matter in detail, *supra*.  The undersigned Judge asked Hines if he had read the PSR and had any objections to it.  Hines refused to respond even though given an opportunity in open court and even though he was warned that a failure to object would result in waiver of claims.  Consequently, he cannot complain of error in this regard.

     As to the second and third grounds, the issues are both procedurally barred and wholly without merit.  Hines raises nonconstitutional claims involving a violation of statutory or procedural rules that he could have asserted in his direct appeal but did not.  As the Court stated, *supra*, these claims are not cognizable in a § 2255 petition.  *Belford*, 975 F.2d at 313 (A § 2255 petition cannot raise nonconstitutional issues that could have been but were not raised on direct

appeal.). Furthermore, "non-constitutional errors which could have been raised on appeal but were not, are barred on collateral review - regardless of cause and prejudice." *Bontkowski v. United States*, 850 F.2d 306, 313 (7th Cir. 1988) (citing *Kaufman v. United States*, 394 U.S. 217 (1969)). Even if his claim that he was sentenced in excess of the statutory maximum is considered as a constitutional claim, it is still procedurally barred because Hines did not raise it on direct appeal or show cause for the procedural fault and actual prejudice from the failure to appeal. *Belford*, 975 F.2d at 313.

The Government cites *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993) for the proposition that sentencing guideline errors are generally not cognizable in a § 2255 proceeding. The Court notes with interest Judge Rovner's dissent in *Hawkins v. United States*, 2013 WL 452441 (7th Cir. February 7, 2013). Therein, Judge Rovner noted that the Seventh Circuit had only posed the issue as an unresolved question, but its query has since crept into the Circuit's case law as an accepted premise. *Hawkins*, 2013 WL 452441 at *9 (citation omitted). Judge Rovner then observed that the United States Supreme Court "has stated only that if an error is neither jurisdictional nor constitutional, in order to be cognizable on collateral review, it must present 'exceptional circumstances' in which a fundamental defect inherently results in a complete miscarriage of justice." *Id.* (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). Judge Rovner then noted that, in *Scott*, the Court "surmised, without deciding, that Guidelines errors should not be redressable upon § 2255 review because, given their status, '[o]ne full and fair

opportunity to make arguments under the Guidelines - at sentencing and on direct appeal - is enough.'" *Id.* (citing Scott, 997 F.2d at 342).

Redressable or not on § 2255 review, It is patently clear that Hines had a "full and fair opportunity" to make his arguments under the guidelines at sentencing and on direct appeal – and failed to make those arguments. Furthermore, he has presented no "exceptional circumstances" showing a fundamental defect that inherently resulted in a complete miscarriage of justice. In short, as presented here, collateral relief under § 2255 is not justified.

Hines's claim that the Court erred in considering conduct concerning Count 3 (possession of heroin and other amounts of marijuana), of which Hines was acquitted, is also meritless. The United States Supreme Court addressing a similar argument - that it is unconstitutional to consider acquitted conduct at sentencing – stressed "that a person whose acquitted conduct is considered at sentencing is not *punished* for a crime of which he has not been convicted. Rather, he is punished for the crime he did commit: and because the sentencing guidelines direct judges to look at the characteristics of the offense, relevant conduct proved by a preponderance standard can include acquitted conduct." *United States v. Waltower*, 643 F.3d 572, 574 (7th Cir. 2011) (quoting *United States v. Watts*, 519 U.S. 148, 156-57 (1997) (per curiam) (sentence informed by acquitted conduct violates neither the Fifth Amendment's prohibition on double jeopardy nor its due-process guarantee); *see also Alabama v. Shelton*, 535 U.S. 654, 665 (2002) ("Thus, in accord with due process, [a defendant] could have been sentenced more severely based simply on *evidence* of the underlying conduct … even if he had been acquitted of the

misdemeanor with the aid of appointed counsel.") (citations and quotation marks omitted) (emphasis in original)).

The PSR described the FBI interview, to which Hines had agreed, at which Hines admitted possession of marijuana as well as introducing tobacco and heroin into the prison (Crim. Doc. 217, PSR, at ¶ 11). Hines described receiving four-to-five "bullets," containing contraband each weekend over an eight-week period (*Id.* at ¶¶ 11-12). FBI Agent Joe Shevlin testified at trial that Hines admitted to his role in the scheme that introduced drugs and contraband into USP Marion (Crim. Doc. 244, Trans. at p. 9 *et seq*). A bullet of marijuana contained about an ounce, with a value in the institution between $1,300.00 and $1,500.00, and a bullet of heroin contained about five grams, with a value in the institution between $15,000.00 and $20,000.00 (*Id.* at pp. 18-:24-20:2). Shevlin's testimony supported the amounts of heroin and marijuana found as relevant conduct in the PSR.

The Court did not err in finding that Agent Shevlin's testimony at trial, tested on cross-examination, was sufficiently reliable to establish relevant conduct under the guidelines.

Lastly, Hines's argument regarding the length of his sentence is mertiless. The PSR concluded that the term of imprisonment for Count 1 was not more than 60 months, and the term of imprisonment for Count 2 was not more than 120 months (Crim. Doc. 217, PSR, ¶ 98). Under 18 U.S.C. § 3584(a), the Court had discretion to impose terms of imprisonment to run concurrently or consecutively. Since the statutory maximum sentence was 180 months, the Court's imposition of a

144-month sentence was well below that maximum.  Hines cannot establish that the Court abused its discretion in deciding his sentence.

Moreover, Hines's assertion that the undersigned Judge failed to comply with the requirements of § 3553(c) in stating its reasons for the sentence imposed is patently untrue (*See* Crim Doc. 245, Sentencing Trans, p. 21 *et seq*).  The Court engaged in a lengthy analysis of the § 3553(a) factors as applied to Hines and, in light of those factors, gave its reasons for "stacking" Counts 1 and 2 and running the terms of imprisonment consecutively (*See id.*).

E.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  An appeal from a final order in a § 2255 proceeding may not be taken to the Court of Appeals unless the petitioner obtains a certificate of appealability.  **28 U.S.C. § 2253(c)(1)**.  A certificate of appealability may issue only where the petitioner "has made a substantial showing of the denial of a constitutional right."  **28 U.S.C. § 2253(c)(2)**.  In **Slack v. McDaniel, 529 U.S. 473 (2000)**, the Supreme Court interpreted this requirement to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  **Slack, 529 U.S. as 484**.  And, where the court denies a petition on procedural grounds, a petitioner must show that reasonable jurists "would find it debatable whether the district court was correct in its procedural ruling."  **Id.**  A petitioner need not show that his appeal will succeed, but he must show "something more than the absence of frivolity" or the existence of

mere "good faith." *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003) (**quoting** *Barefoot v. Estelle* 463 U.S. 880, 893 (1983))**.**   Furthermore, where the district court denies the request, a petitioner may request that a circuit judge issue the certificate.  **Fed. R. App. P. 22(b)(1)**.

Based upon the record before it, which the Court has exhaustively reviewed, the Court concludes that reasonable jurists would not find it debatable whether the Petition should be dismissed.  HInes has not made a substantial showing that his sentence "was imposed in violation of the Constitution or laws of the United States." *Shell v. United States*, 448 F.3d 951, 954 (7th Cir. 2006) (**citing** *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (**quoting** 28 U.S.C. § 2255))**.**  Accordingly, the Court **DENIES** a certificate of appealability.

F.    Conclusion

For the foregoing reasons, the Court **DISMISSES** with prejudice Petitioner Hines's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 and **DENIES** a certificate of appealability.

IT IS SO ORDERED.

DATED this 18th day of March, 2013

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge